1  SANDRA R. BROWN-BODNER, ESQ., CA Bar # 157446
2  EDWARD M. ROBBINS, JR., ESQ., CA Bar # 82696
   HOCHMAN SALKIN TOSCHER PEREZ P.C.
3  9150 Wilshire Boulevard, Suite 300
   Beverly Hills, California  90212-3414
4  Telephone:   (310) 281-3200
5  Facsimile:   (310) 859-1430
   E-mail:      brown@taxlitigator.com
6  E-mail:      robbins@taxlitigator.com
7

8
   JOHN M. COLVIN
9  COLVIN + HALLETT
   Local Counsel
10 719 Second Avenue, Ste 1450
   Seattle, WA 98104
11 Telephone:   (206) 223-0800
12 Facsimile:   (206) 467-8170
   E-mail:      jcomlvin@colvinhallettlaw.com
13

14
15 Attorneys for Defendant
   Arthur Ditto
16

17        **UNITED STATES DISTRICT COURT**
18      **WESTERN DISTRICT OF WASHINGTON**
              **TACOMA DIVISION**
19

20 UNITED STATES OF AMERICA,          CASE NO.:  3:19-cv-5792BHS

21                                     Answer to Complaint for Recovery of
                          Plaintiff,   Civil Penalties
22
   v.                                  **JURY DEMAND**
23

24 ARTHUR DITTO,

25                          Defendant.

26

27
   Answer                        1
28 (Case No.: 3:19-cv-5792-BHS)

HOCHMAN SALKIN TOSCHER PEREZ P.C.

Defendant, Arthur Ditto, for his answer to the government's Complaint for Recovery of Civil Penalties, using the same paragraph numbering and format, hereby responds on information and belief as follows, noting that to the extent that any fact herein is not formally responded, it should be deemed denied:

## I.       Defendant

1.       Defendant Arthur Ditto ("Mr. Ditto") was a United States citizen at all times relevant to the assessment of the outstanding liabilities at issue in this action. Mr. Ditto resides in Gig Harbor, Washington. **Admits the first sentence. Denies the second sentence.**

## II.      Jurisdiction and Venue

2.       Jurisdiction over this action is conferred upon this district court by 28 U.S.C. §§ 1331, 1345, and 1355. **Admits.**

3.       Venue is proper under 28 U.S.C. § 1391(b)(1) because Mr. Ditto resides in this district, and venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. **Admits.**

## III.     Legal Authority for FBAR Penalty

4.       31 U.S.C. § 5314 authorizes the Secretary of the Treasury to require United States persons to report certain transactions with foreign financial agencies. Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" to the Internal Revenue Service ("IRS") for each year in which such relationship exists. 31 C.F.R. § 1010.350(a). **This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a response is required, Denies.**

///

Answer
(Case No.: 3:19-cv-5792-BHS)

2

HOCHMAN SALKIN TOSCHER PEREZ P.C.
9150 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Telephone: 310-281-3200

1   5.  To fulfill this requirement, a person must file a Form TDF 90-22.1,

2 "Report of Foreign Bank and Financial Accounts," commonly known as an

3 "FBAR." For the years at issue, the FBAR was due no later than June 30 of the

4 following calendar year. 31 C.F.R. § 1010.306(c). **This paragraph sets forth legal**

5 **conclusions and questions of law for which no response is required. To the**

6 **extent a response is required, Denies.**

7   6.  31 U.S.C. § 5321(a)(5) authorizes the imposition of civil penalties for

8 a willful failure to comply with the reporting requirements of 26 U.S.C. § 5314.

9 Specifically, section 5321(a)(5)(C) provides for a penalty in the amount of the

10 greater of $100,000 or 50% of the balance in the account at the time of the violation.

11 **This paragraph sets forth legal conclusions and questions of law for which no**

12 **response is required.  To the extent a response is required, Denies.**

13   7.  The penalty set forth under 31 U.S.C. § 5321(a)(5)(C) is subject to

14 interest and further penalties under 31 U.S.C. § 3717. **This paragraph sets forth**

15 **legal conclusions and questions of law for which no response is required. To the**

16 **extent a response is required, Denies.**

17 **IV.** **Defendant's Failure to Report His Interest in Foreign Financial**

18   **Accounts**

19   8.  Mr. Ditto is originally from Canada. He moved to the United States in

20 1961 and became a naturalized U.S. citizen in or around 1979. **Admits.**

21   9.  From in or around 1982 to 1993, Mr. Ditto was President, CEO, and

22 Board Chairman of Plexus Resources Corporation. Following a merger in 1993

23 through approximately 2005, Mr. Ditto was the President, Chief Operating Officer,

24 and a director of Kinross Gold Corporation ("Kinross"), and President and Chief

25 Executive Officer of Kinross Gold U.S.A., which was the operating subsidy for all

26 United States operations. **Denies. Alleges that in 1996, Mr. Ditto was President**

27

28 Answer            3         HOCHMAN SALKIN TOSCHER PEREZ P.C.

1  and CEO of Kinross Gold USA.  **Mr. Ditto later became President and COO of**

2  **Kiross Gold Corporation and held that position until 2002.  Mr. Ditto served**

3  **on the Board of Directors until 2005.**

4        10.    While President and CEO of Kinross, Mr. Ditto explored the possibility

5  of opening a mine in the Democratic Republic of Congo (formerly known as Zaire).

6  **Denies.  Alleges that in the late 1990s, Kinross sought to diversify from gold**

7  **mining to include other mining opportunities such as reactivating a copper**

8  **mine in the Congo.**

9        11.    Mr. Ditto formed a joint venture, called Kinross Forrest Limited, with

10  Kinross and the Forest Group to give legitimacy to the project, but with the

11  understanding that Mr. Ditto would ultimately purchase Kinross's interest in the

12  mine. Kinross owned 60% of Kinross Forrest Limited and the Forest Group owned

13  the remaining 40%.  **Denies. Alleges that the joint venture agreement known as**

14  **Kinross Forest Limited ("KFL") was signed on October 23, 2001 between**

15  **Kinross and the newly formed Congolese government to reopen and redevelop**

16  **a copper mine.  Further alleges that in 2001, Mr. Ditto was an employee of**

17  **Kinross, so his involvement in such transaction was in the capacity of an**

18  **employee of Kinross, not on his own behalf.  Denies that there was any**

19  **understanding or agreement that Mr. Ditto would ultimately purchase Kinross'**

20  **interest in the mine.**

21        12.    Kinross Forest Limited owned 75% of the mine and the Democratic

22  Republic of Congo owned the remaining 25%. **Admits.**

23        13.    In or around 2004, Mr. Ditto set up "Balloch," a Bermuda foreign shell

24  corporation, which acquired Kinross's ownership interest in Kinross Forrest

25  Limited.  **Denies.  Alleges that Mr. Ditto did not cause the establishment of**

26  **Balloch.  Asserts that Balloch Resources Ltd was originally named New Inca**

27

28  Answer               4               HOCHMAN SALKIN TOSCHER PEREZ P.C.
    (Case No.: 3:19-cv-5792-BHS)                     9150 Wilshire Blvd., Suite 300
                                                      Beverly Hills, CA 90212
                                                     Telephone: 310-281-3200

1   **Gold Ltd and was incorporated in Bermuda on October 7, 1996, engaged in the**
2   **acquisition, exploration and development of mineral properties. The name**
3   **changed to Balloch Resources Ltd., on July 8, 2004.  On November 30, 2005,**
4   **the name was then changed to Katanga Mining Limited.  Further alleges that**
5   **Mr. Ditto and other unrelated parties acquired the shares of Balloch in 2004.**
6   **By 2004, Kinross had lost interest in diversifying its gold mining operation and**
7   **agreed to sell to Mr. Ditto 20% of its interest in KFL.  Since Mr. Ditto was a**
8   **board member, the company preferred that Mr. Ditto not own the interest**
9   **personally, so Mr. Ditto sold his KFL interest to his mother's trust, the Challis**
10  **Trust, in exchange for a payable from the trust, which was paid off over time.**

11       14.    The Challis Trust is a foreign irrevocable discretionary trust that was
12  created in the Bailiwick of Jersey ("Jersey") in 1996. **Admits.**

13       15.    The Challis Trust was created in Jersey because Mr. Ditto believed
14  Jersey has a special status that makes it attractive as a domicile for banking. **Denies.**
15  **Alleges that the Challis Trust, which was formed in 1996, was formed by Mr.**
16  **Dittos' mother as part of her estate plan, which included the completion of her**
17  **last will and testament.  Further alleges that the foreign management firm that**
18  **created the Challis Trust chose Jersey to create the Challis Trust, apparently**
19  **because the foreign management firm believed Jersey has a special status that**
20  **made it attractive as a domicile for trusts.**

21       16.    Mr. Ditto place 50,000 Balloch shares in the Challis Trust in or around
22  November 2005. The shares were deposited to account XXX-XXXXX3-159 at RBC
23  Dexia Investor Services nominally titled in the name of York Investments Ltd c/o
24  Middlemarch Partners Ltd ("York"). **Admits first and second sentence.** York is a
25  foreign shell corporation that was set up in Anguilla in June 1996 to manage the
26  associated foreign bank account owned by the Challis Trust. **Denies the third**

27
28

1   **sentence. Alleges that the company identified as York is a creation of the**
2   **government of Anguilla through its 1994 International Business Companies**
3   **("IBC") Ordinance. Anguilla authorizes these IBC's to conduct business**
4   **anywhere in the world, except Anguilla. As a result, these IBC's are not**
5   **authorized to conduct business anywhere, since Anguilla lacks the power to**
6   **authorize business activity in another sovereign country. York is an alias used**
7   **by the management and trust company as a label to show ownership of various**
8   **assets managed by the management and trust company.**

9       17.    Mr. Ditto placed his Balloch shares in the Challis Trust because he
10  wanted to have "a separation" to protect himself from liability for his business
11  activity in Africa. **Admits.**

12      18. The beneficiaries of the Challis Trust were Mr. Ditto, Elena Gail
13  McCallum (Mr. Ditto's wife), and Mr. Ditto's four sons. **Admits.**

14      19.    On July 21, 2005, Mr. Ditto received a distribution for 50,000 Canadian
15  dollars from the Challis Trust. **Denies. Alleges that the bank account record**
16  **provided by the trustee of the Challis Trust indicates that this distribution was**
17  **a "loan to John." There is no evidence that Mr. Ditto received this distribution.**

18      20.    On March 17, 2006, the management and trust company created the
19  Keswick Trust as a successor to the Challis Trust. Mr. Ditto is the sole trustee of the
20  Keswick Trust. **Denies. Alleges that Mr. Ditto was not the Trustee of the**
21  **Keswick Trust.**

22      21.    The beneficiaries of the Keswick Trust are Mr. Ditto, Gail McCallum,
23  Mr. Ditto's four sons, and the Arthur H. Ditto Family Foundation. **Admits.**

24      22.    On August 8, 2007, all assets of Challis Trust were transferred to the
25  Keswick Trust. The total assets transferred were $1,440,519.16. The assets primarily
26  came from Mr. Ditto's Balloch shares and commission income from Kinross.
27
28

HOCHMAN SALKIN TOSCHER PEREZ P.C.
9150 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Telephone: 310-281-3200

1  **Denies in part.  Alleges that the Balloch shares were actually shares of Katanga**
2  **Mining Limited as a result of the name change. Further alleges that the shares**
3  **referenced as Balloch shares and the commission income were one and the**
4  **same.    The  shares  referenced  as  Balloch  shares  were  the  consideration**
5  **comprising the commission income.**

6       23.    The Keswick Trust held foreign bank accounts in the name of Tain
7  Holdings Ltd c/o Middlemarch Partners Ltd ("Tain").  **Admits first sentence.** Tain
8  is a foreign shell corporation set up to manage the associated foreign bank accounts
9  owned by the Keswick Trust. **Denies second sentence.  Alleges that the company**
10 **identified as Tain is a creature of the government of the British Virgin Islands**
11 **through  its  International  Business  Companies  ("IBC")  Act,  Cap.  291.  The**
12 **British Virgin Islands authorizes these IBC's to conduct business anywhere in**
13 **the world, except the British Virgin Islands. These IBC's may not conduct**
14 **business anywhere, since the British Virgin Islands lacks the power to authorize**
15 **business activity in another sovereign country. Tain is an alias used by the**
16 **management and trust company as a label to show ownership of various assets**
17 **managed by the management and trust company.**

18      24.    Tain was incorporated in the British Virgin Islands in 2004**. Denies.**
19 **Alleges that Tain is a sham that cannot be said to rise to the level of something**
20 **that is incorporated as understood under the laws of the United States.**

21      25.    Mr. Ditto requested and received funds from the Keswick Trust when
22 needed. In July 2011, Mr. Ditto received a $400,000 loan from the Keswick Trust.
23 **Denies in part. As a beneficiary, Mr. Ditto requested a loan, subject to the**
24 **Trustee's  independent  discretion.  Terms  were  negotiated,  agreed  and**
25 **documented.  Mr. Ditto did not make any other requests for distributions.**
26 **Other amounts reported as distributions on tax filings made as part of the**

27
28 Answer                              7                 HOCHMAN SALKIN TOSCHER PEREZ P.C.
   (Case No.: 3:19-cv-5792-BHS)                          9150 Wilshire Blvd., Suite 300
                                                         Beverly Hills, CA 90212
                                                         Telephone: 310-281-3200

**OVDP were, with the exception of the $50,000 referenced in paragraph 19 above, were accounted for by the Trustee as repayments of the original loan associated with the Trustee's purchase, on behalf of the Challis Trust, of shares of KFL from Mr. Ditto.**

26.    Mr. Ditto was actively involved in the investment decisions of the Keswick Trust. **Denies.**

27.    Mr. Ditto filed timely FBARs for calendar years 2005 through 2012 that listed his personal foreign accounts but omitted the Challis Trust and the Keswick Trust's foreign accounts, which were nominally titled in the names York and Tain, respectively. **Admits.**

28.    In addition to his personal foreign accounts, in the years 2005 through 2012, Mr. Ditto had a financial interest in and signatory authority over foreign bank accounts, in various countries, as described below:

| Name on Account | Account Number | Name of Bank | Location of Bank | Years Interest Held |
|---|---|---|---|---|
| Tain[1] | 01XXX/XX0823 | Deutsche Bank | Jersey | 2005-2010 |
| Tain[2] | 02XXX/XX0823 | Deutsche Bank | Jersey | 2005-2010 |
| York | XXX-XXXXX3-159 | RBC Dexia Investor Services | Canada | 2005-2008 |
| Tain | 01XXXXXXX23/01 | Deutsche Bank | Jersey | 2008-2010 |
| Tain | 02XXXXXXX23/02 | Deutsche Bank | Jersey | 2008-2010 |
| Tain | XXX-XXXXX3-369 | RBC Dexia Investor Services | Canada | 2008-2011 |
| Tain | XXX-XXXXX3-370 | RBC Dexia Investor Services | Canada | 2010-2011 |
| Tain | XX1778 | Compagnie Monesgasque de Banque | Monaco | 2011-2012 |

**Denies. Alleges that in addition to his personal foreign accounts, in the years 2005 through 2012, Mr. Ditto only had a financial interest in each of the foreign bank accounts, in various countries, as described in the chart above if and to the extent that each of such accounts were, under the U.S. tax laws in effect**

---

[1] This bank account was originally titled in the name of Whitmill Trust Co Limited RE Tain Holdings ltd. The name was changed in 2008 to Tain Holdings Ltd C/O Middlemarch partners Ltd.

[2] This bank account was originally titled in the name of Whitmill Trust Co Limited RE Tain Holdings ltd. The name was changed in 2008 to Tain Holdings Ltd C/O Middlemarch partners Ltd.

HOCHMAN SALKIN TOSCHER PEREZ P.C.
9150 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Telephone: 310-281-3200

1    **during such times, found to be entirely grantor trusts.**

2        29.    On December 24, 2013, Mr. Ditto was accepted into the 2012 Offshore

3 Voluntary Disclosure Program ("OVDP"), and he admitted that he was the beneficial

4 owner of the bank accounts listed in the chart in paragraph 29 *(sic.)*. **Denies. Alleges**

5 **that Mr. Ditto was accepted into the OVDP and, thereunder, Mr. Ditto agreed**

6 **that, to the extent that such accounts were found to be entirely grantor trust,**

7 **he had a financial interest in the foreign bank accounts, in various countries, as**

8 **described in the chart above in paragraph 28.**

9        30.    The OVDP is an IRS program that offers taxpayers with undisclosed

10 income an opportunity to become current with their tax returns. As part of the

11 OVDP, Mr. Ditto filed amended FBARs for the 2005 through 2012 calendar years

12 that included the previously omitted trust accounts listed in the chart in paragraph

13 29 *(sic.)*. **Admits first and second sentences.**   Mr. Ditto also filed Forms 1040X

14 ("Amended U.S. Individual Income Tax Return"), admitting he failed to report

15 taxable income that had been concealed in the undisclosed foreign accounts listed in

16 the chart in paragraph 29 *(sic.)* in each of the 2005-2012 tax years. **Denies third**

17 **sentence. Alleges that Mr. Ditto also filed Forms 1040X ("Amended U.S.**

18 **Individual Income Tax Return"), admitting he failed to report taxable income**

19 **from the foreign accounts listed in the chart in paragraph 28 in each of the**

20 **2005-2012 tax years.**

21        31.    In the delinquent FBARs, Mr. Ditto reported that the aggregate

22 maximum U.S. dollar value of his interest in the foreign accounts (otherwise referred

23 to as the "highest account balance") exceeded $10,000 at all relevant times. **Admits.**

24        32.    Mr. Ditto was removed from the OVDP in June 2016 for failure to

25 cooperate because he failed to fully respond to IRS Information Document Requests.

26 **Denies. Alleges that Mr. Ditto was improperly removed from the OVDP**

27

28    Answer                              9

HOCHMAN SALKIN TOSCHER PEREZ P.C.
9150 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Telephone: 310-281-3200

1  and that Mr. Ditto fully cooperated with the IRS and that Mr. Ditto fully and

2  promptly responded to all IRS Information Document Requests.  Mr. Ditto

3  further alleges that the IRS acted in an arbitrary and capricious manner in

4  attempting to remove Mr. Ditto from the OVDP; that the IRS violated its own

5  internal policies and has acted with unclean hands in attempting to remove Mr.

6  Ditto from the OVDP; asserts that latches applies to the IRS's actions in

7  attempting to remove Mr. Ditto from the OVDP without responding to Mr.

8  Ditto's timely protest which was filed with the Territory Manager as directed

9  by the IRS (then) Deputy Commissioner Miller Memorandum ("Miller

10  Memo") applicable to OVDP opt outs and removals and the procedures advised

11  by the IRS in Form 4566 which was issued to Mr. Ditto.  Mr. Ditto further

12  alleges that the IRS's purported removal of Mr. Ditto from the OVDP was a

13  breach of its contract with Mr. Ditto, who fully satisfied his obligations under

14  the IRS's offered OVDP and provided due consideration to the IRS, by

15  communicating and cooperating with the IRS throughout its examination

16  including but not limited to: (a) providing a statute extension of more than 2

17  years for the IRS to examine and assess; (b) producing thousands of pages of

18  requested documents; (c) filing requested amended returns; (d) compromising

19  issues in favor of the IRS; and (d) agreeing to waive his 5th Amendment rights

20  in responding to the IRS's inquiries including but not limited to submitting to

21  an interview by the IRS.

22      33.    After Mr. Ditto was removed from the OVDP, the IRS conducted

23  examinations of Mr. Ditto's FBAR obligations for calendar years 2005 through

24  2012. Based on the examination, Mr. Ditto was assessed civil penalties for his willful

25  failure to report his interest in the foreign financial accounts listed in the chart in

26  paragraph 29 for the 2005-2012 calendar years. **Denies. Alleges that Mr. Ditto was**

27

28  Answer                                    10                    HOCHMAN SALKIN TOSCHER PEREZ P.C.
    (Case No.: 3:19-cv-5792-BHS)                                    9150 Wilshire Blvd., Suite 300
                                                                    Beverly Hills, CA 90212
                                                                    Telephone: 310-281-3200

1 improperly removed from the OVDP; that Mr. Ditto was not willful with
2 regards to his FBAR reporting obligations.  Alleges further that Mr. Ditto
3 cooperated throughout the IRS examination which began in 2014, under the
4 pre-clearance acceptance of Mr. Ditto into the OVDP, and that cooperation
5 continues today.  Alleges that the IRS has assessed the civil penalties asserted
6 herein; but asserts that such assessments was improper, illegal, and a breach of
7 the government's promises under the OVDP.

8 **V. CLAIM FOR RELIEF: JUDGMENT FOR CIVIL PENALTY**

9 *Liability for the Civil Penalties*

10     34.     During the 2005 through 2012 calendar years, Mr. Ditto was a United
11 States person within the meaning of 31 C.F.R. § 1010.350(b). **Admits.**

12     35.     During the 2005 through 2012 calendar years, Mr. Ditto had a financial
13 interest in the foreign accounts listed in the chart in paragraph 29 (*sic.*) and/or
14 signatory authority over the foreign accounts, within the meaning of 31 C.F.R. §
15 1010.350(f). **Denies. Alleges that During the 2005 through 2012 calendar years,**
16 **Mr. Ditto only had a financial interest in each of the foreign bank accounts, in**
17 **various countries, as described in the chart in paragraph 28 (*sic.*) above if and**
18 **to the extent that each of such accounts were, under the U.S. tax laws in effect**
19 **during such times, found to be entirely grantor trusts.**

20     36.     The foreign accounts listed in the chart in paragraph 29 were bank
21 accounts in a foreign country. **Admits.**

22     37.     For each of the years 2005 through 2012, the balance of the foreign
23 accounts listed in the chart in paragraph 29 (*sic.*), individually and/or collectively,
24 exceeded $10,000. **Admits.**

25     38.     Mr. Ditto failed to file FBARs with regard to the 2005 through 2012
26 calendar years that disclosed his interest in each of the foreign accounts listed in the

27
28
HOCHMAN SALKIN TOSCHER PEREZ P.C.
                                                            9150 Wilshire Blvd., Suite 300
                                                            Beverly Hills, CA 90212
                                                            Telephone: 310-281-3200

chart in paragraph 29 (*sic.*) on or before each of the applicable deadlines, as required by 31 U.S.C. § 5314 and 31 C.F.R. § 103.27(c). **Denies. Alleges that Mr. Ditto did not disclose his interests in the subject foreign accounts and further alleges that under 26 USC § 679, or the applicable subsequently promulgated regulations, as were then in effect, the law was unclear as to whether such accounts were required to be reported or that the law placed Mr. Ditto on clear legal notice such that accounts were reportable. Mr. Ditto further alleges that he is entitled to the reasonable cause exception set forth under all applicable laws.**

39.     The failure of Mr. Ditto to timely file FBARs that disclosed each of his foreign accounts listed in the chart in paragraph 29 (*sic.*) with regard to the 2005 through 2012 calendar years was willful within the meaning of 31 U.S.C. § 5321(a)(5). **Denies.**

*Assessment and Collection of the Civil Penalty*

40.     On August 29, 2017, a delegate of the Secretary of the Treasury timely assessed civil penalties against Mr. Ditto, due to the willful failure of Mr. Ditto to disclose the foreign accounts listed in the chart in paragraph 29 to the IRS ("FBAR Penalty") for each of the years 2005 through 2012. The total penalty amount that the United States seeks to reduce to judgment is $3,965,778.00 as of August 29, 2017. **Denies. Alleges that Mr. Ditto did not willfully fail to disclose foreign accounts as alleged by the government. Alleges that if the action has been filed timely, it is solely as a direct consideration to the IRS arising from the statute extensions agreed to by Mr. Ditto as a condition of his cooperation under the OVDP. Admits that the government seeks to reduce to judgment the amount of $3,965,778 as of August 29, 2017. Alleges that the August 29, 2017 civil penalty was not properly assessed.**

Answer
(Case No.: 3:19-cv-5792-BHS)

12

HOCHMAN SALKIN TOSCHER PEREZ P.C.
9150 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Telephone: 310-281-3200

41.     The assessments of the FBAR penalties was timely. Pursuant to 31 U.S.C. § 5321(b)(1), the statute of limitations for the assessment of an FBAR penalty is six years. On November 12, 2015, Mr. Ditto's counsel signed a consent to extend the time to assess the civil penalties under 31 U.S.C. § 5321 for the 2005 through 2012 years until December 31, 2017. On March 31, 2017, Mr. Ditto's counsel signed a consent to extend the time to assess the civil penalties under 31 U.S.C. § 5321 for the 2005 through 2012 years until December 31, 2018. The FBAR penalties for the 2005 through 2012 years were timely assessed on August 29, 2017. **Denies. Alleges that, as part of Mr. Ditto's continuing cooperation with the IRS under the OVDP, counsel for Mr. Ditto signed consents to extend the time to assess the civil penalties at the times stated above by the government. Mr. Ditto presently lacks information whether the FBAR assessment statute was open at the time the consents were signed. Alleges that, in all events, the August 29, 2017 civil penalty was not properly assessed.**

42.     A delegate of the Secretary of Treasury sent Mr. Ditto notice of the assessment of the FBAR Penalties and demand for payment. **Admits.**

43.     Despite notice and demand for payment, Mr. Ditto has failed to pay the penalties assessed against him with respect to his willful failure to file an FBAR for the 2005, 2006, 2007, 2008, 2009, 2010, 2011, and 2012 calendar years. **Denies. Alleges that Mr. Ditto did not willfully fail to disclose foreign accounts as alleged herein. Admits that Mr. Ditto was issued notice and demand and that he has not paid the amount sought in the notice and demand. Alleges that, in all events, the August 29, 2017 civil penalty was not properly assessed.**

44.     In addition to the FBAR Penalties, Mr. Ditto, owes late-payment penalties pursuant to 31 U.S.C. § 3717(e)(2), and 31 Code of Federal Regulations § 5.5(a), and interest according to law. **Denies.**

Answer
(Case No.: 3:19-cv-5792-BHS)

13

HOCHMAN SALKIN TOSCHER PEREZ P.C.
9150 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Telephone: 310-281-3200

45.   Mr. Ditto is liable to the United States of America for the FBAR Penalty, as well as associated penalties and interest, in the total amount of $3,965,778.00 as of August 29, 2017, plus statutory accruals from that date until the liability is paid in full. **Denies. Alleges that recovery of FBAR penalties is limited to the regulatory cap of $10,000 for non-willful violations or $100,000 for willful violations found under § 5321.**

46.   This is a timely civil action to collect the FBAR Penalty, and the associated penalties and interest under 31 U.S.C. § 5321(b)(2). **Admits that this action seeks to collect an FBAR Penalty. Alleges that the action has been filed timely solely as a direct benefit to the IRS from the statute extensions agreed to by Mr. Ditto as a condition of his cooperation under the OVDP. Alleges that, in all events, the August 29, 2017 civil penalty was not properly assessed.**

///
///
///
///
///
///
///
///
///
///
///
///
///
///

Answer
(Case No.: 3:19-cv-5792-BHS)

14

HOCHMAN SALKIN TOSCHER PEREZ P.C.
9150 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Telephone: 310-281-3200

1     WHEREFORE, having responded to the allegations in the Government's

2   complaint, Mr. Ditto requests the Court to:

3     A.     Dismiss this complaint and action with prejudice; and

4     B.     Award the defendant its costs and such other further relief as the Court

5   deems just and proper.

6

7   DATED:  January 3, 2020          HOCHMAN SALKIN TOSCHER PEREZ P.C.

8

9

10                                  By: /s/Sandra R. Brown-Bodner

11                                  SANDRA R. BROWN-BODNER
                                    EDWARD M. ROBBINS, JR.
12                                  Attorneys for Defendant, Arthur Ditto

13                                  JOHN M. COLVIN

14                                  COLVIN + HALLETT
                                    Local Counsel
15

16

17
    6718465_1
18

19

20

21

22

23

24

25

26

27

28  Answer                          15            HOCHMAN SALKIN TOSCHER PEREZ P.C.
    (Case No.: 3:19-cv-5792-BHS)                   9150 Wilshire Blvd., Suite 300
                                                   Beverly Hills, CA 90212
                                                   Telephone: 310-281-3200